**IN THE UNITED STATES DISTRICT COURT**

**FOR THE DISTRICT OF ARIZONA**

JOHN LEE MCLAUGHLIN,

                 Plaintiff,

       vs.

CAROLYN W. COLVIN, Acting
Commissioner of Social Security
Administration,

              Defendant.

Case No. 2:13-cv-00780-SLG

## DECISION AND ORDER

      John Lee McLaughlin initiated this Social Security action in federal district court after exhausting his administrative remedies.  The matter has been fully briefed by Mr. McLaughlin and Carolyn Colvin, Acting Commissioner of the Social Security Administration.[1]  Mr. McLaughlin requested oral argument, but it was not necessary to the Court's determination of this matter.  For the reasons set forth below, the ALJ's decision will be reversed and remanded for further proceedings.

---

[1]  Docket 17 (McLaughlin Br.); Docket 18 (Def. Br.); Docket 24 (Reply).

## FACTUAL AND PROCEDURAL BACKGROUND

Mr. McLaughlin is currently 41 years old.[2]  He has a high school education and a commercial driver's license.  His past relevant work includes approximately five years as a garbage truck driver[3] and work as a day laborer, an aluminum siding assembler, and a convenience store operator.[4]  He alleges a disability onset date of August 20, 2007.[5]

### I.   Mr. McLaughlin's Application for Disability Insurance Benefits and Supplemental Security Income.

On March 5, 2008, Mr. McLaughlin filed an application for disability insurance benefits ("DIB") and an application for supplemental security income ("SSI").[6]  He was 34 years old at that time.  He listed the following conditions as limiting his ability to work: back injury, spinal stenosis, and bulging and ruptured discs.[7]  The Social Security Administration denied his initial applications for benefits, and also denied his applications upon reconsideration.[8]

---

[2]  *See* Administrative Record (herein "A.R.") 16 (stating Mr. McLaughlin's date of birth as June 10, 1973).

[3]  A.R. 153 (self-reporting work as a garbage truck driver between April 2002 and August 2007).

[4]  A.R. 16-20, 50, 153.

[5]  A.R. 117.

[6]  A.R. 43, 117-18, 119-25.  The relevant regulations governing DIB and SSI are virtually identical. Only the DIB regulations will be cited in this opinion.  Parallel SSI regulations correspond with the last digits of the DIB citation (e.g., 20 C.F.R. § 404.1520 corresponds with 20 C.F.R. § 416.920).

[7]  A.R. 135.

[8]  A.R. 57-60, 61-64, 70-72, 73-76.

In January 2009 Mr. McLaughlin requested a hearing before an administrative law judge ("ALJ").[9]  The hearing took place on March 28, 2011 in Phoenix, Arizona before ALJ Ronald C. Dickinson.  The ALJ, Mr. McLaughlin, his attorney, and vocational expert ("VE") Marilyn Kinnier were present at the hearing.  Mr. McLaughlin and VE Kinnier testified.[10]

## II.   The Administrative Record.

The administrative record before the ALJ reflects the following:

### A. Medical Evidence.

#### 1.   Urgent Care in December 2007 and January 2008.

On December 28 and 31, 2007, Mr. McLaughlin was treated in the emergency room at Banner Desert Medical Center.  On December 28, he reported low back pain radiating to his left leg, and on December 31, he reported pain "deep in the buttocks area radiating down the back of the leg" but "denie[d] any back pain."[11]  His medical records indicate discharge with "sciatica, low back pain, and medication refill."[12]  On January 17, 2008, Mr. McLaughlin was treated at an urgent care facility for left side pain in his back,

---

[9]  A.R. 77.

[10]  *See* A.R. 10-35. The vocational expert's name is spelled "Kanear" in the hearing transcript, A.R. 30, but Kinnier in the ALJ's decision, A.R. 43.  The Court relies on the ALJ's decision.  *See* A.R. 40-56.

[11]  A.R. 216-217.

[12]  A.R. 219.

hip, thigh, leg, ankle, foot, and toe.[13]   He was prescribed Percocet, Prednisone, and Neurontin.[14]

### 2. Treatment at Mission Family Medical Center with Colleen McCarter, FNP, between January and March 2008.

On January 25, 2008, Mr. McLaughlin began treatment for chronic low back pain with Colleen McCarter, Family Nurse Practitioner, at the Mission Family Medical Center. Mr. McLaughlin reported his low back pain first began after a 2004 work injury but the recent onset had been "sudden following no specific incident."[15]   He reported that the pain was "severe, sharp [and] stabbing," "aggravated by lifting, sitting, standing, and walking," and "relieved by bedrest."[16]

A February 2008 MRI revealed "mild spinal canal stenosis at the L5-S1 level," "disc extrusion with caudal migration of the fragment at the L5-S1 level," "disc protrusion [at the] L4-5 level," and "[d]isc desiccation . . . at the L4-5 and L5-S1 levels."[17]

On March 20, 2008, Mr. McLaughlin again saw Nurse McCarter.  Mr. McLaughlin reported that his back pain was controlled with Lyrica and Percocet.  Nurse McCarter prescribed an anti-depressant "to satisfy [an] insurance plan requirement, although clinically, he is not depressed."[18]   Nurse McCarter also noted that Mr. McLaughlin

---

[13]  A.R. 213-215.

[14]  A.R. 215.

[15]  A.R. 236.

[16]  A.R. 230.

[17]  A.R. 256.

[18]  A.R. 230.

presented her with disability paperwork for completion. She completed a medical assessment on that day opining that Mr. McLaughlin was not able to sit, stand, or walk for more than one hour in each position in an eight-hour workday, and could not lift or carry more than ten pounds.[19]

### 3. Treatment, including surgery, with F. David Barranco, M.D., at Barrow Neurosurgical Associates and follow up with Nurse McCarter.

In March 2008, Mr. McLaughlin had a neurosurgical consultation with F. David Barranco, M.D.  Mr. McLaughlin reported to Dr. Barranco that he injured his back while working in a hurricane cleanup.  After seeing a physician, obtaining pain pills, and taking several weeks off from work, Mr. McLaughlin indicated that he had returned to work for three more years in the garbage hauling business, during which time his pain continued on and off, before he stopped working and moved to Arizona.[20]  Mr. McLaughlin reported that in December 2007 he "awoke with severe stabbing pain in the back that then began radiating down his left" leg.[21]  Since then, he reported that his leg pain had been constant, accompanied by tingling and numbness, but that the pain was palliated by medications and sitting or lying down.  At the time of the hearing, Mr. McLaughlin reported he was taking Oxycodone three times per day and Lyrica.[22]  Dr. Barranco's impression was "Chronic back pain with disk desiccation at L4-5, L5-S1" and "Large left L5-S1 herniated

---

[19]  A.R. 245-46.

[20]  A.R. 204-06.

[21]  A.R. 204.

[22]  A.R. 205.

disk with S1 radiculopathy."[23]  Dr. Barranco recommended a lumbar microdiscectomy for the left L5-S1 disk, a type of back surgery.[24]

On April 9, 2008 Mr. McLaughlin had back surgery pursuant to Dr. Barranco's recommendation.[25]  Dr. Barranco's notes of May 9, 2008 stated the following:

> Postoperatively, [Mr. McLaughlin] states the pain is not as bad, but he still has discomfort unless he takes his medications.  It bothers him the most in the morning, then when he takes his medications it feels much better, and in comparison to what he had before surgery he can tell the difference when he takes his medications.[26]

Dr. Barranco noted that he "encouraged Mr. McLaughlin "to increase a walking program and begin some water walking."[27]  A note from Dr. Barranco later that month indicates that Mr. McLaughlin's pain "is dramatically better" but that "his weakness and numbness persists."[28]  Also in May 2008, Mr. McLaughlin reported to Nurse McCarter that he "ha[d] improved mobility" and "[m]inimal pain in his back, but residual parathesia"; that Lyrica "really helps" his nerve pain; that he had started walking therapy; and that he was "feeling much better-not so depressed and stressed."[29]

In June 2008, Mr. McLaughlin reported to Nurse McCarter that he "now has more good days than bad days and is experiencing decreased pain with increased [range of

---

[23]  A.R. 206.

[24]  A.R. 206.

[25]  A.R. 295-97.

[26]  A.R. 289.

[27]  A.R. 290.

[28]  A.R. 287.

[29]  A.R. 317.

motion]."[30]   In July 2008, Mr. McLaughlin reported to Nurse McCarter that he had problems with his left ankle, he wanted to discontinue narcotic pain medication, and was "considering going in to computers as a job change."[31]   Later that same month, Mr. McLaughlin reported to Nurse McCarter that he was no longer taking any narcotic pain medication.  He also stated that he had a "mild exacerbation of low back pain" as a result of assisting police officers in capturing someone who jumped into his backyard.[32]

Mr. McLaughlin had 17 physical therapy sessions between June and September 2008.  The therapist noted that Mr. McLaughlin declined further therapy because he "was not making much progress" and had stated "it was going to be hard to get into PT because of other commitments."[33]

### 4. Continued treatment at Mission Family Medical Center with Nurse McCarter and Stacie Kagie, M.D., between August 2008 and February 2011, May 2009 treatment with Paul Lynch, M.D. at Arizona Pain Specialists, and December 2010 consultation with Dr. Barranco.

In August 2008, Mr. McLaughlin reported to Nurse McCarter that he had experienced increased anxiety over the past two months.[34]   In September 2008, Mr. McLaughlin reported he had continuing back pain and that he had increased pain when he skipped Lyrica dosages.   He also indicated that he had increased anxiety and

---

[30]  A.R. 311.

[31]  A.R. 448-50.

[32]  A.R. 444.

[33]  A.R. 377, 405.

[34]  A.R. 441.

emotional stress despite his medications.[35]  However, he also reported that he could walk for about a mile before his legs started to get tired.[36]

In February 2009, Nurse McCarter's notes state that Mr. McLaughlin had gained ten pounds due to decreased activities and had not consistently been doing his back exercises.[37]  That same month, her notes state that Mr. McLaughlin was "unable to exercise due to pending SS disability" and was "afraid to exercise much due to fear of injuring his back."[38]  In March 2009, Nurse McCarter's notes state that Mr. McLaughlin reported "his left side radicular pain [wa]s slowly increasing."[39]  In April 2009, her notes state that Mr. McLaughlin reported left leg spasming and intense radicular pain.[40]  Mr. McLaughlin saw Nurse McCarter again in May 2009 when she completed another disability medical assessment, opining that Mr. McLaughlin could sit, stand, and walk for less than one hour in an eight-hour workday, could lift ten to twenty pounds, and could carry less than ten pounds.[41]

On May 22, 2009, Mr. McLaughlin was seen by Paul Lynch, M.D., at Arizona Pain Specialists.[42]  At that time, Mr. McLaughlin rated his lower back pain as a 6 on a scale of

---

[35] A.R. 438.

[36] A.R. 438-40.

[37] A.R. 500.

[38] A.R. 571.

[39] A.R. 566.

[40] A.R. 564.

[41] A.R. 507-08.

[42] A.R. 609-11.

0-10.  Dr. Lynch evaluated Mr. McLaughlin for placement of a spinal column stimulator and found that Mr. McLaughlin was a good candidate.  Dr. Lynch found tenderness to palpation over the facet joints and decreased range of motion, but normal strength in the extremities. [43]

In June 2009, Mr. McLaughlin reported to Nurse McCarter that he would not proceed with placement of a spinal column stimulator because he was afraid of the potential side effects and because he had "about 90% pain relief at th[at] time and want[ed] to continue on his narcotic pain med."[44]

Between November 2009 and August 2010, Nurse McCarter's notes reflect that Mr. McLaughlin described his pain as "a dull ache," but that he had "good relief" with pain medications.[45]   In June 2010, Nurse McCarter noted that Mr. McLaughlin's treatment would be transferred to Stacie Kagie, M.D., because of Nurse McCarter's pending departure from the practice.[46]  She also noted that Mr. McLaughlin "has been extremely compliant with his narcotic use, as well as his other medications, over the past two years and is very stable on his current pain medication."[47]

---

[43]  A.R. 609-12.

[44]  A.R. 559-60.

[45]  A.R. 545 (11/4/09); A.R. 543 (12/2/09); A.R. 538 (12/20/09); A.R. 532 (1/27/10 and the "course [of chronic back pain] has been decreasing"); A.R. 529 (2/24/10); A.R. 526-30 (3/23/10); A.R. 523 (4/21/10); A.R. 520 (5/19/10); A.R. 518 (6/16/10); A.R. 514 (7/14/10); A.R. 511-15 (8/17/10).

[46]  A.R. 515.

[47]  *Id.*

In September 2010, Mr. McLaughlin reported to Dr. Kagie that he had severely increased back pain.  He discussed an incident during which he was transported to an emergency room by ambulance.[48]  A September 2010 MRI revealed a "left paracentral disc protrusion" at L4/5 and a "central disc protrusion with associated endplate ostephytic spurring" at L5/S1.[49]  A November 2010 MRI revealed similar findings."[50]

In December 2010, Dr. Barranco conducted a surgical consultation concerning pain radiating into Mr. McLaughlin's left leg.[51]  Dr. Barranco recommended epidural block injections and added "[o]nce the blocks help with the discomfort, he should be weaned from the large dose of narcotics he is currently taking."[52]  According to Dr. Kagie's notes, Mr. McLaughlin declined the epidural block treatments for several reasons: he was concerned about epidural injections because his father had had a bad experience; he was worried about scarring; and he was experiencing good pain relief from medications.[53]

In February 2011, Dr. Kagie completed a medical assessment and opined that in an eight-hour work day, Mr. McLaughlin could sit, stand, and walk for less than two hours each.  She further opined that Mr. McLaughlin could not crawl or crouch at all; could

---

[48]  A.R. 509.

[49]  A.R. 599.

[50]  A.R. 607.

[51]  A.R. 601.

[52]  A.R. 606.

[53]  A.R. 596-97.

occasionally bend, climb, reach, stoop, balance, kneel, and use his left foot; and could frequently use his right foot.  She did not evaluate his ability to lift or carry weight.[54]

Dr. Kagie completed another medical assessment in July 2011 and again opined that in an eight-hour work day, Mr. McLaughlin could sit, stand, and walk for less than two hours each.  She opined that Mr. McLaughlin could not crawl, climb, or crouch; could occasionally bend, stoop, balance, and kneel; and could frequently use both feet.  Again, she did not evaluate his ability to lift or carry weight.[55]

### 5.  Psychological Consultation by Shelly K. Woodward, Ph.D.

At the request of the Arizona Disability Determination Service, Shelly K. Woodward, Ph.D., examined Mr. McLaughlin on January 13, 2009 and prepared a psychological report.[56]  Dr. Woodward administered the Folstein Mini Mental Status Examination and found that Mr. McLaughlin scored 100% on the exam.[57]  Dr. Woodward also found that Mr. McLaughlin's short-term, intermediate, and remote memory appeared intact.[58]  Dr. Woodward diagnosed Mr. McLaughlin with adjustment disorder with mixed anxiety and depressed mood; amphetamine dependence, sustained full remission; nicotine dependence; and chronic back pain.[59]

---

[54] A.R. 594.

[55] A.R. 673.

[56] A.R. 476-70.

[57] A.R. 479.

[58] *Id.*

[59] *Id.*

Dr. Woodward also completed a psychological/psychiatric medical source statement, in which she opined that Mr. McLaughlin did not appear to have any impairment in understanding and memory, sustained concentration and persistence, or social interaction, but that he may have difficulty responding appropriately to changes or stressors in the work setting.[60]

### 6.  Opinions of State Agency Physicians.

State agency physician Ernest Griffith, M.D., reviewed the record and opined that Mr. McLaughlin had the ability to stand, walk, or sit for about six hours in an eight-hour workday.[61]  State agency physician John Fahlberg, M.D., also reviewed the record and summarily concurred with Dr. Griffith.[62]  State agency psychologist Randall J. Garland, Ph.D., also reviewed the record and determined that Mr. McLaughlin's mental impairments would impose no more than mild functional limitations.[63]

### B. Testimony at the Hearing.

Mr. McLaughlin testified that he has pain on his left side that "starts at [his] lumbar spine and goes down the sciatic nerve all the way down to [his] left foot and, basically, down to [his] pinky toe."[64]  He testified that his pain is "constant" and sometimes is "so

---

[60] A.R. 480-81.

[61] A.R. 355-62.

[62] A.R. 475.

[63] A.R. 483-93.

[64] A.R. 22.

severe that [he] can't move, walk."[65]   He also suffers from anxiety and a "little bit of depression from . . . being in this situation, and having to live at home again."[66]

Mr. McLaughlin testified that on a good day, he can stand for 45 minutes to an hour, but on a bad day, he can only stand for 15 minutes before he gets "very uncomfortable, very painful" shooting pain in his left leg.[67]   He testified that he can walk between 45 minutes to an hour, but then his back will start aching and he has to sit or lie down.[68]  Mr. McLaughlin testified that he spends most of his time lying down—up to seven hours per day—but limits the naps he takes to three or four times a week to two hours at a time.[69]   He testified that he cooks simple meals and cleans the bathroom two to three times per week, but for under ten minutes at a time.[70]   He can bend enough to place his dishes in the dishwasher.[71]

The ALJ asked Mr. McLaughlin about his April 2008 back surgery.  The ALJ and Mr. McLaughlin had the following exchange about that surgery:

**ALJ.**  And did that help?

**Mr. McLaughlin.**  All they did was remove some particles out of my back from the cartilage that broke off.  And, no, it did not help, because there was too much nerve damage.

---

[65] A.R. 23.

[66] A.R. 26.

[67] A.R. 24.

[68] A.R. 26.

[69] A.R. 27.

[70] A.R. 28.

[71] A.R. 29.

**ALJ.** Because I'm reading through the reports, and it says after you had the surgery that pain is much better.

**Mr. McLaughlin.** It improved slightly, but it's -- the nerve damage causes my leg to just quit on me and I'll fall to the ground, and then I have constant pain all the time.[72]

Mr. McLaughlin testified that he has not had injections in his lower back to help with the pain because he's "very scared of those."[73]

Mr. McLaughlin testified that he takes Percocet three times per day and that "it takes the edge off, really, that's about all it does."[74]  On bad days, he takes it four times.[75]

The ALJ then posed hypothetical questions to the VE as to whether jobs exist in the state of Arizona and the national economy for a 37-year-old person who has a high school education and the ability to do light exertion level, unskilled work; who can lift 20 pounds occasionally and up to 10 pounds more frequently; who cannot crawl, crouch, climb, squat, or kneel; who cannot use his legs or feet for pushing or pulling of foot or leg controls; and who requires a job that allows for a sit/stand option.[76]  The VE responded that such a person could work as a cashier, parking lot attendant, or small products assembler.[77]   The ALJ noted that the Dictionary of Occupational Titles does not

---

[72] A.R. 22.

[73] A.R. 23-24.

[74] A.R. 25.

[75] *Id.*

[76] A.R. 31.

[77] A.R. 32.

specifically refer to a sit/stand option, but the VE testified that she had seen these jobs performed in that way.[78]

Upon questioning by Mr. McLaughlin's attorney, the VE testified that if this hypothetical person had to take more breaks due to back pain than a normal employer would provide (i.e., more than a morning, afternoon, and lunch break) the person could not work in the national economy.[79]  The VE also testified that a hypothetical person who can sit less than one hour, stand less than one hour, walk less than one hour, and lift less than ten pounds could not work in the national economy.[80]

## III.    The ALJ's Decision and Mr. McLaughlin's Appeal.

On April 27, 2011, the ALJ issued his decision, concluding that Mr. McLaughlin had not been under a disability within the meaning of the Social Security Act from August 20, 2007 through the date of the decision.[81]  Mr. McLaughlin filed a Request for Review of Hearing Decision.[82]  On March 12, 2013, the Appeals Council opted not to review the denial and deemed the ALJ's decision the final decision of the Commissioner of Social Security.[83]

Mr. McLaughlin timely filed this action on April 18, 2013, seeking reversal of the Commissioner's decision and remand for payment of DIB and SSI benefits together with

---

[78] *Id.*

[79] A.R. 33.

[80] *Id.*

[81] A.R. 40-56.

[82] A.R. 7-9.

[83] A.R. 1-6.

costs and attorney's fees.[84]   The Commissioner opposes the requested relief and asks the Court to dismiss the Complaint and affirm the ALJ's decision.[85]

## STANDARD OF REVIEW

The ALJ's denial of benefits to Mr. McLaughlin should be set aside "only if it is not supported by substantial evidence or is based on legal error."[86]   An ALJ's determination is based on legal error if the ALJ failed to apply the proper legal standard.[87]   Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support [the ALJ's] conclusion."[88]   A reviewing court "must consider the entire record as a whole,"[89] and "[i]f the record considered as a whole can reasonably support either affirming or reversing the [ALJ's] decision, [the court] must affirm."[90]   The Court applies the same standard of review regardless of a claimant's age.[91]

---

[84] Docket 1 (Compl.); Docket 17 at 30-31 (McLaughlin Br.).

[85] Docket 10 at 2 (Answer); *see also* Docket 18 at 21 (Def. Br.).

[86] *Hill v. Astrue*, 698 F.3d 1153, 1158 (9th Cir. 2012) (citing 42 U.S.C. § 405(g)).

[87] *See Bayliss v. Barnhart*, 427 F.3d 1211, 1217 (9th Cir. 2005) ("We will affirm . . . if the ALJ applied the proper legal standard . . . .").

[88] *Id.*

[89] *Hill*, 698 F.3d at 1159 (quoting *Sandgathe v. Chater*, 108 F.3d 978, 980 (9th Cir. 2006)).

[90] *Hiler v. Astrue*, 687 F.3d 1208, 1211 (9th Cir. 2012) (quoting *McCartey v. Massanari*, 298 F.3d 1072, 1075 (9th Cir. 2002)).

[91] The Commissioner suggests that the Court should "carefully scrutinize the employment prospects of so young an individual before placing [him] on the disability rolls.  Docket 18 at 9 (Def. Br.) (citing *McLamore v. Weinberger*, 538 F.2d 572, 574 (4th Cir. 1976)).  But the Commissioner nevertheless cites the correct standard of review, which does not take into consideration a claimant's age, *see* Docket 18 at 19, and that is the standard applied by this Court.

## DISCUSSION

I.   **The Five Step Analysis.**

The Social Security Act provides for the payment of disability insurance benefits and supplemental security income to individuals who have contributed to the social security program and who suffer from a disability.[92]  Disability is defined as an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months."[93]

The Commissioner has established a five-step process for determining disability.[94] At Steps 1 through 4, the claimant bears the burden of proving his "entitlement to disability insurance benefits"; at Step 5, the burden shifts to the Commissioner to show that there is gainful activity that the claimant can perform.[95]

At Step 1, the claimant must show he is not currently engaged in substantial gainful activity.[96]  At Step 2, the claimant must demonstrate that his impairment is "severe," i.e., it is an impairment that "significantly limits [her] physical or mental ability to do basic work activities" that has lasted or will last for at least twelve months.[97]  At Step 3, if the claimant

---

[92] 42 U.S.C. § 423(a).

[93] 42 U.S.C. § 423(d)(1)(A).

[94] 20 C.F.R. § 404.1520(a)(1).

[95] *Parra v. Astrue*, 481 F.3d 742, 746 (9th Cir. 2007) (quoting *Tidwell v. Apfel*, 161 F.3d 599, 601 (9th Cir. 1998)).

[96] 20 C.F.R. § 404.1520(a)(4)(i).

[97] 20 C.F.R. § 404.1520(a)(4)(ii), (c); 20 C.F.R. § 404.1509.

proves his impairment is listed in 20 C.F.R. Part 404, Subpart P, Appendix 1, then the ALJ must conclude the claimant is disabled.[98]   If not, then the ALJ determines the claimant's residual functional capacity ("RFC"), or the most work the claimant can still do despite his limitations.[99]   At Step 4, the ALJ uses the RFC to determine whether the claimant is capable of performing his past relevant work.[100]   If the claimant proves he cannot perform his past relevant work, then at Step 5, the Commissioner must show— based on the claimant's RFC, age, education, and work experience—that the claimant is capable of performing other work that exists in the national economy.[101]   If the claimant can make an adjustment to other work, he is not disabled.   If he cannot make such an adjustment, then he is considered disabled.[102]

In this case, at Step 1 the ALJ found that Mr. McLaughlin had not engaged in substantial gainful activity since August 20, 2007, the alleged disability onset date.[103]   At Step 2, the ALJ found that Mr. McLaughlin suffered from the following impairments, which he found are severe when considered in combination: status-post lumbar surgery, post-laminectomy syndrome, chronic lumbo-sacral pain, chronic pain syndrome, an anxiety

---

[98]   20 C.F.R. § 404.1520(a)(4)(iii).

[99]   20 C.F.R. § 404.1545(a)(1).   The ALJ makes the RFC determination based on "all of the relevant medical and other evidence," including "descriptions and observations of [the claimant's] limitations" provided by the claimant and others.   *Id.* § 404.1545(a)(3).

[100]   20 C.F.R. § 404.1520(a)(4)(iv).

[101]   20 C.F.R. § 404.1520(a)(4)(v).

[102]   *Id.*

[103]   A.R. 45.

disorder, depression, and an adjustment disorder with mixed anxiety and depression.[104] At Step 3, the ALJ found that Mr. McLaughlin's impairments do not meet the criteria of an impairment or combination of impairments listed in 20 C.F.R. Part 404, Subpart P, Appendix 1.[105]   As to mental impairments, the ALJ found that Mr. McLaughlin had mild restrictions in activities of daily living, mild difficulties in social functioning, and moderate difficulties with regard to concentration, persistence, or pace.[106]

The ALJ then determined that Mr. McLaughlin has the following RFC:

"[C]laimant has the residual functional capacity to perform light work with restrictions . . . .   The claimant should have the option to sit and stand at will.   He cannot crawl, crouch, climb, squat or kneel and cannot use his lower extremities for pushing or pulling.   In addition, the claimant can only perform unskilled work.[107]

At Step 4, the ALJ relied upon the testimony of the VE to conclude that Mr. McLaughlin is unable to perform any of his past relevant work.[108]

At Step 5, the ALJ found that "[c]onsidering [Mr. McLaughlin's] age, education, work experience, and residual function capacity, there are jobs that exist in significant numbers in the national economy that [Mr. McLaughlin] could perform."[109]   Specifically, based on the testimony of the VE, the ALJ concluded that Mr. McLaughlin could perform

---

[104]  A.R. 45.

[105]  A.R. 46.

[106]  *Id.*

[107]  A.R. 47.

[108]  A.R. 50.

[109]  *Id.*

the jobs of cashier, parking lot attendant, and small products assembler.[110]  Accordingly, the ALJ concluded that Mr. McLaughlin was not disabled under the Social Security Act.[111]

## II.    Issues on Appeal

On appeal, Mr. McLaughlin asserts that the ALJ (1) erred in his consideration of Mr. McLaughlin's FMLA paperwork; (2) failed to adequately incorporate Dr. Woodward's assessment into the RFC; (3) failed to properly weigh Mr. McLaughlin's subjective symptom testimony; and (4) failed to properly weigh the medical opinions of Dr. Kagie and Nurse McCarter.[112]

## III.    Analysis

### A.  The ALJ did not err in his consideration of Mr. McLaughlin's FMLA paperwork.

Mr. McLaughlin asserts that the ALJ erred in his evaluation of the Family Medical Leave Act ("FMLA") paperwork Nurse McCarter submitted in support of Mr. McLaughlin's applications.[113]  In May 2008, Nurse McCarter completed FMLA paperwork, indicating that Brenda McLaughlin needed to take off from work to care for Mr. McLaughlin for approximately four months, from April 9 to August 1, 2008.  And in October 2008, Nurse McCarter completed paperwork indicating Ms. McLaughlin needed to take off from work to care for Mr. McLaughlin between October 26, 2008 and October 26, 2009.[114]  The ALJ

---

[110]  A.R. 50-51.

[111]  A.R. 51.

[112]  Docket 17 at 1, 7-8, 17–19 (McLaughlin Br.).

[113]  Docket 17 at 17 (McLaughlin Br.).

[114]  A.R. 328, 349, 460-62.

assigned these forms little weight because they "related to periods of only temporary disability less than twelve months."[115]  Mr. McLaughlin asserts that the documents reflect disability over twelve months, and also that "a finding that Mr. McLaughlin no longer needs a care giver is not evidence of a lack of disability."[116]   The Court agrees with Mr. McLaughlin that a claimant is not required to be so disabled that he requires a caregiver in order to obtain disability benefits.[117]   However, the ALJ did not err by noting that the FMLA forms reflect only short term disability and giving them little weight.  The forms are not determinative of DIB or SSI; they were simply pieces of evidence that were considered by the ALJ.

### B. The ALJ adequately accounted for the opinion of Shelly K. Woodward, Ph.D., Consulting Physician in his RFC assessment.

The ALJ's decision states that "Dr. Woodward found that [Mr. McLaughlin] would have difficulty responding appropriately to changes/stressor in a work setting."[118]   The ALJ assigned Dr. Woodward's opinion "significant weight" because "it is consistent with the medical evidence related to [Mr. McLaughlin's] mental impairments."[119]   Because of that opinion, the ALJ limited Mr. McLaughlin to unskilled work.[120]

---

[115]  A.R. 49 (citing A.R. 328, 349, 460-62).

[116]  Docket 17 at 17-18 (McLaughlin Br.).

[117]  *See Id.* at 18 (citing cases).

[118]  A.R. 49 (citing A.R. 480).

[119]  *Id.*

[120]  *Id.*

Mr. McLaughlin asserts that the ALJ erred because although he gave significant weight to Dr. Woodward's opinion, the ALJ "omits the effect of work stress from his RFC assessment," which constitutes legal error.[121]  Mr. McLaughlin asserts that "the mentally impaired may have difficulty meeting the requirement of even so-called 'low-stress' jobs."[122]

But Dr. Woodward opined that Mr. McLaughlin did not have difficulty in understanding and memory, sustained concentration and persistence, or social interaction.[123]   And as to responding appropriately to changes or stressors in the work setting, the ALJ noted that at various medical care visits, Mr. McLaughlin demonstrated alert or normal mental status or indicated that medication managed his anxiety.[124]  Mr. McLaughlin does not provide any legal support for his argument that the ALJ committed legal error in his assessment of Mr. McLaughlin's mental impairment, after finding that he had mild mental impairments as to activities of daily living and social functioning and moderate difficulties as to concentration, persistence, or pace.[125]  Accordingly, the Court rejects Mr. McLaughlin's assertion that the ALJ's inadequately accounted for Dr. Woodward's opinion in the RFC.

---

[121]  Docket 17 at 19 (McLaughlin Br.).

[122]  *Id.* (quoting SSR 85-15).

[123]  A.R. 480-81.

[124]  A.R. 48 (citing A.R. 224, 234, 238, 312, 315, 317-18, 333, 336, 509, 519, 549, 551).

[125]  A.R. 46.

### C. The ALJ provided specific, clear, and convincing reasons for finding Mr. McLaughlin's statements concerning the intensity, persistence, and limiting effects of his symptoms to be only partially credible.

"In assessing the credibility of a claimant's testimony regarding subjective pain or the intensity of symptoms, an ALJ engages in a two-step analysis."[126]   First, the ALJ determines whether there is "objective medical evidence of an underlying impairment which could reasonably be expected to produce the . . . symptoms alleged."[127]   In the second step, unless there is affirmative evidence that the claimant is malingering, the ALJ must give "specific, clear and convincing reasons" before discrediting the claimant's testimony.[128]   "In evaluating the claimant's testimony, the ALJ may use 'ordinary techniques of credibility evaluation.'"[129]   For example, the ALJ may consider the claimant's reputation for truthfulness, prior inconsistent statements, inconsistencies between the claimant's testimony and his conduct, an unexplained or inadequately explained failure to seek treatment, the claimant's daily activities, the claimant's work

---

[126]  *Molina v. Astrue*, 674 F.3d 1104, 1112 (9th Cir. 2012).

[127]  *Id.* (quoting *Vasquez v. Astrue*, 572 F.3d 586, 591 (9th Cir. 2009)).

[128]  *Id.* (quoting *Vasquez*, 572 F.3d at 591).  The Commissioner asserts the standard of review that courts should apply to an ALJ's credibility findings was articulated by the Ninth Circuit in *Bunnell v. Sullivan*.  Docket 18 at 10-11 (Def. Br.) ("An ALJ's credibility findings, 'properly supported by the record, must be sufficiently specific to allow a reviewing court to conclude the adjudicator rejected the claimant's testimony on permissible grounds and did not arbitrarily discredit a claimant's testimony regarding pain.'" (*quoting Bunnell v. Sullivan*, 947 F.2d 341, 345-46 (9th Cir. 1991) (en banc) (internal quotation omitted)).  The Commissioner maintains that the "clear and convincing reasons" standard has been articulated by three-judge panels, but only an *en banc* panel may overturn *Bunnell*.  Docket 18 at 11 n.5 (Def. Br.).  Courts in this district have previously rejected this argument.  *See, e.g.*, *Valenzuela v. Colvin*, No. CV 11-812-TUC-HCE, 2013 WL 1092886, at *4 n.4 (D. Ariz. Mar. 15, 2013); *see also Garrison v. Colvin*, 759 F.3d 995, 1015-16 (9th Cir. 2014).

[129]  *Molina*, 674 F.3d at 1112 (quoting *Turner v. Comm'r of Soc. Sec.*, 613 F.3d 1217, 1224 n.3 (9th Cir. 2010)).

record, and testimony from physicians and third parties concerning the nature, severity, and effect of the claimant's symptoms.[130]

In this case, at step one of this analysis, the ALJ found that Mr. McLaughlin reported that "he experiences severe pain.  He cannot move or feel his left leg.  He cannot walk without pain.  He further reported that it hurt to do anything including to sit or lay down.  He could not put much pressure on his left ankle because of nerve damage.  It is difficult for him to go up and down stairs as he is afraid he will fall."[131]  The ALJ found that Mr. McLaughlin's "medically determinable impairments could reasonably be expected to cause only some of the alleged symptoms."[132]

In step two of the analysis, the ALJ concluded that "claimant's statements concerning the intensity, persistence and limiting effects of these symptoms are not credible to the extent they are inconsistent with the above residual functional capacity assessment."[133]  Under that RFC, as described above, the ALJ had concluded that Mr. McLaughlin could perform light work at an unskilled job so long as he had an option to sit and stand at will and was not required to "crawl, crouch, climb, squat or kneel," or use his lower extremities for pushing or pulling.[134]  The ALJ also discussed evidence in the record about the daily activities Mr. McLaughlin was able to perform:

---

[130]  *See Orn v. Astrue*, 495 F.3d 625, 636 (9th Cir. 2007); *Thomas v. Barnhart*, 278 F.3d 947, 958–59 (9th Cir. 2002).

[131]  A.R. 47, citing 134-142 (Disability Report completed by Mr. McLaughlin).

[132]  A.R. 48.

[133]  A.R. 48.

[134]  A.R. 47.

> As far as [Mr. McLaughlin]'s credibility, the claimant has described daily activities which are not limited to the extent one would expect, given the complaints of disabling symptoms and limitations.  For example, claimant spends time on the computer, surfs the internet, listens to music, watches movies, does his own laundry, loads the dishwasher, claimant drives, goes shopping for food, walks about a mile a day and goes on dates.[135]

In assessing Mr. McLaughlin's credibility, the ALJ also noted that Mr. McLaughlin took medications and had back surgery—factors that the ALJ noted would typically weigh in a claimant's favor—but that the medical records reflect that "the medications have been relatively effective in controlling [his] symptoms" and "the surgery was generally successful in relieving [his] symptoms."[136]  The ALJ also noted that Mr. McLaughlin told his health care provider in 2008 that he was considering going into computers as a job change.  As the ALJ notes, this statement was made a year after his alleged disability onset date.[137]

Mr. McLaughlin makes four arguments as to why the ALJ's adverse credibility finding is not supported by "specific, clear and convincing reasons."[138]

---

[135]  A.R. 49 (citing A.R. 143, 477).

[136]  *Id.*

[137]  *Id.* (citing A.R. 287, 448).

[138]  Docket 17 at 21-29 (McLaughlin Br.) (quoting *Vasquez*, 572 F.3d at 591).  The Commissioner asserts the standard of review that courts should apply to an ALJ's credibility findings was articulated by the Ninth Circuit in *Bunnell v. Sullivan*.  Docket 18 at 10-11 (Def. Br.) ("An ALJ's credibility findings, 'properly supported by the record, must be sufficiently specific to allow a reviewing court to conclude the adjudicator rejected the claimant's testimony on permissible grounds and did not arbitrarily discredit a claimant's testimony regarding pain.'" (quoting *Bunnell v. Sullivan*, 947 F.2d 341, 345-46 (9th Cir. 1991) (en banc) (internal quotation omitted)).  The Commissioner maintains that the "clear and convincing reasons" standard has been articulated by three-judge panels, but only an *en banc* panel may overturn *Bunnell*.  Docket 18 at 11 n.5 (Def. Br.).  Courts in this district have previously rejected this argument.  *See, e.g.*, *Valenzuela v. Colvin*, No. CV 11-812-TUC-HCE, 2013 WL 1092886, at *4 n.4 (D. Ariz. Mar. 15, 2013).

*First,* Mr. McLaughlin asserts that "the ALJ does not explain which reported symptom[s] could reasonably be caused by Mr. McLaughlin's medically determinable impairments, and which could not." [139]  As noted above, after identifying Mr. McLaughlin's overriding symptom as severe pain, the ALJ lists various subjective symptoms that Mr. McLaughlin had identified as stemming from that pain. The ALJ then states that "only some" of those alleged symptoms could be caused by Mr. McLaughlin's medically determinable impairments.  The Ninth Circuit requires that an "ALJ must state specifically which symptom testimony is not credible and what facts in the record lead to that conclusion."[140]  Here, the ALJ did not specifically identify which of Mr. McLaughlin's specific symptoms could be caused by the impairments.  For example, the ALJ did not explain whether he found not credible Mr. McLaughlin's testimony that he cannot move or feel his left leg, and/or his testimony that he cannot go up or down stairs.  But the Court finds that the overriding symptom that Mr. McLaughlin described was one of severe pain.  Read in its entirety, the ALJ's decision makes clear that he found only partially credible Mr. McLaughlin's evidence regarding the severity of that pain.  The ALJ provided an adequate correlation between the severity of Mr. McLaughlin's pain symptoms and the partial adverse credibility finding.

*Second,* Mr. McLaughlin objects to the ALJ's conclusion that his activities of daily living conflict with his reported limitations and disability.[141]  As discussed *supra*, the ALJ

---

[139]  Docket 17 at 23 (McLaughlin Br.).

[140]  *Smolen v. Chater*, 80 F.3d 1273, 1284 (9th Cir. 1996).

[141]  Docket 17 at 25 (McLaughlin Br.).

noted that Mr. McLaughlin spends time on the computer, watches movies, does laundry, loads the dishwasher, drives, shops, walks about a mile a day, and goes on dates.[142]  Mr. McLaughlin asserts that these activities of daily living are not inconsistent with disability because Mr. McLaughlin prepares only easy meals, does dishes and laundry only twice a week, limits his physical activity to ten to fifteen minute intervals, shops only once a month, and conducts limited complete personal hygiene care due to pain.[143]  An ALJ may consider daily living activities in his credibility analysis, particularly if a claimant engages in numerous daily activities involving skills that could be transferred to the workplace.[144]  On the other hand, a claimant "does not need to be 'utterly incapacitated' in order to be disabled."[145]  The daily living activities described here do not necessarily transfer easily to the workplace, and alone, they might not support an adverse credibility finding. Nonetheless, the ALJ did not err in relying on those activities to support his partial adverse credibility finding.

**Third,** Mr. McLaughlin asserts that the ALJ inaccurately concluded that his medications and surgeries "were generally successful in controlling his symptoms."[146] Mr. McLaughlin asserts that medical records not cited by the ALJ reflect that he "continue[d] to experience pain, left leg numbness, and decrease[d] range of motion

---

[142]  A.R. 49.

[143]  Docket 17 at 25 (McLaughlin Br.) (citing A.R. 144-46, 477); *but see* A.R. 26 (Mr. McLaughlin's testimony that he can sustain 45 minutes to an hour of walking).

[144]  *Burch v. Barnhart*, 400 F.3d 676, 681 (9th Cir. 2005).

[145]  *Vertigan v. Halter*, 260 F.3d 1044, 1049-50 (9th Cir. 2001); *Webb v. Barnhart*, 433 F.3d 683 (9th Cir. 2005).

[146]  Docket 17 at 27 (McLaughlin Br.).

(despite surgery and medications)."[147]  There is no doubt that Mr. McLaughlin continues to suffer some degree of pain—indeed, the ALJ found that he had a significant impairment.[148]    But the ALJ accurately referred to medical records reflecting improvements in Mr. McLaughlin's condition and a reduction in pain.  The question in the proceedings before the ALJ was not whether Mr. McLaughlin continues to have pain, but whether he has an "inability to engage in any substantial gainful activity" because of an impairment that has or can last more than twelve months.[149]  The ALJ found that the record demonstrated that Mr. McLaughlin's medications and surgery were relatively effective in controlling his symptoms.  There was substantial evidence in the record to support this finding, which weighed in favor of the ALJ's partial adverse credibility finding regarding Mr. McLaughlin's reported symptoms of severely disabling pain.

*Fourth,* Mr. McLaughlin asserts the ALJ erred by relying on Mr. McLaughlin's statement that he was considering going into computers as a job change a year after his disability onset date to support the adverse credibility finding.[150]  A desire to work or even a failed effort to work "in and of itself . . . is not a sufficient basis for [an] ALJ's adverse credibility finding,[151]  However, consideration of this evidence as one factor in determining symptom credibility is not error.  Overall, the ALJ otherwise provided the requisite specific,

---

[147]  *Id.* (citing A.R. 224, 287-89, 473-74, 564-65, 556-67, 571-73, 609-11).

[148]  *See* A.R. 45 (step 2 analysis).

[149]  42 U.S.C. § 423(d)(1)(A).

[150]  Docket 17 at 27-28 (McLaughlin Br.).

[151]  *Lingenfelter v. Astrue*, 504 F.3d 1028, 1038 (9th Cir. 2007).

clear and convincing reasons for finding Mr. McLaughlin not fully credible with respect to the severity of his pain symptoms.

### D. The ALJ failed to provide specific and legitimate reasons supported by substantial evidence in the record for giving little weight to the opinion of Dr. Kagie.

An ALJ may reject the contradicted opinion of a treating physician only after providing "specific and legitimate reasons that are supported by substantial evidence in the record."[152]   A non-examining physician's opinion "cannot by itself constitute substantial evidence that justifies rejection of the opinion of either an examining physician or a treating examining physician.[153]

As noted above, in February 2011 and July 2011, Dr. Kagie completed medical assessments opining that in an eight-hour work day, Mr. McLaughlin could sit, stand, and walk less than two hours each and that he had various other physical restrictions.[154]  The ALJ stated that Dr. Kagie's "medical statement noting that the claimant could perform less than sedentary work . . . contrasts sharply with the other evidence or record, which renders it less persuasive," and assigned it little weight.[155] But no further explanation or interpretation is included in the ALJ's decision; nor does the ALJ specifically identify the other evidence in the record that he found to be in sharp contrast with Dr. Kagie's

---

[152]  *Valentine v. Comm'r of Soc. Sec. Admin*, 574 F.3d 685, 692 (2009) (quoting *Lester v. Chater*, 81 F.3d 821, 830 (9th Cir. 1995)).  Examples of specific and legitimate reasons supported by substantial evidence in the record might include laboratory test results, a nonexamining physician's testimony, and testimony from a claimant that conflicts with a treating physician's opinion.  *See Magallanes v. Bowen*, 881 F.2d 747, 750 (9th Cir. 1989).

[153]  *Lester v. Chater*, 81 F.3d 821, 831 (9th Cir. 1995).

[154]  A.R. 594-95, 673-74.

[155]  A.R. 49.

assessments.  Because Dr. Kagie's opinion was contradicted by the opinions of non-examining state agency physicians Drs. Griffith and Fahlberg,[156] the ALJ was required to provide specific and legitimate reasons supported by substantial evidence in the record for declining to give Dr. Kagie's opinion controlling weight.

Mr. McLaughlin asserts that "[t]he ALJ's conclusion is not a specific and legitimate reason for rejecting [a] treating physician['s] opinion, and is not supported by citation to substantial evidence of record."[157]  He asserts that "no conflicting medical findings or clinical data is cited by the ALJ," and "even if there were conflicting medical signs and clinical data cited by the ALJ, the paucity of reasons offered by the ALJ for giving little weight to the treating physician['s] opinion demonstrates legal error."[158]

Mr. McLaughlin is correct.  In *Thomas v. Barnhart*, the Ninth Circuit set out how an ALJ is to approach conflicting evidence between treating and examining physicians, explaining:

> Although the treating physician's opinion is given deference, the ALJ may reject the opinion of a treating physician in favor of a conflicting opinion of an examining physician if the ALJ makes findings setting forth specific, legitimate reasons for doing so that are based on substantial evidence in the record. The ALJ can meet this burden by *setting out a detailed and thorough summary of the facts and conflicting clinical*

---

[156]  A.R. 355-62, 475.  Mr. McLaughlin asserts that the ALJ does not cite the conflicting opinions in his decision, *see* Docket 24 at 5 (Reply), but the ALJ notes the conflicting state agency opinions at A.R. 49.

[157]  Docket 17 at 13 (McLaughlin Br.).

[158]  *Id.* at 14 (McLaughlin Br.) (citing *Widmark v. Barnhart*, 454 F.3d 1063, 1069 (9th Cir. 2006); 20 C.F.R. § 404.1527).

> *evidence, stating his interpretation thereof, and making findings.*[159]

Here, the ALJ may have intended to meet these requirements by discussing the medical evidence that precedes his statement regarding Dr. Kagie's assessments, but his conclusory statement rejecting her opinions without interpretation or specific findings is inadequate.

The opinion of a treating physician is typically given great weight because "[s]he is employed to cure and has a greater opportunity to know and observe the patient as an individual."[160]   Accordingly, the "specific and legitimate" reasons requirement assures reviewing courts, claimants, and agency officials alike that the ALJ has carefully considered and evaluated the evidence before him before discounting the opinion of a claimant's own physician.  Here, although the ALJ summarized the clinical evidence, he did not identify and interpret the specific conflicts between Dr. Kagie's assessments and the rest of the record that he had determined existed and make the requisite findings of "specific and legitimate" reasons.  This was error.[161]

---

[159] 278 F.3d 947, 957 (9th Cir. 2002) (emphasis added, internal citations and quotation marks omitted).

[160] *Sprague v. Bowen*, 812 F.2d 1226, 1230 (9th Cir. 1987).

[161] Mr. McLaughlin has made a similar argument about the conclusory discounting of Nurse McCarter's opinions.  Docket 17 at 17 (McLaughlin Br.).  Because the ALJ will be permitted to reconsider the medical opinion evidence in this case, the Court does not reach the issue of whether that dismissal constituted a reason "germane" to Nurse McCarter.  *See Molina v. Astrue*, 674 F.3d 1104, 1111 (9th Cir. 2012) (quoting *Turner v. Comm'r of Soc. Sec.*, 613 F.3d 1217, 1224 (9th Cir. 2010)).

## IV.    Remedy

In cases where a medical opinion is erroneously discredited, the Ninth Circuit has established a "credit-as-true rule" which strongly favors remand for a calculation and award of benefits "[w]here remand [for further proceedings] would unnecessarily delay the receipt of benefits."[162]   The Court of Appeals has recently articulated a three-part standard to determine whether that remedy is appropriate, asking whether:

> (1) the record has been fully developed and further administrative proceedings would serve no useful purpose; (2) the ALJ has failed to provide legally sufficient reasons for rejecting evidence, whether claimant testimony or medical opinion; and (3) if the improperly discredited evidence were credited as true, the ALJ would be required to find the claimant disabled on remand.[163]

The Ninth Circuit's recent decision in *Garrison* recognizes that where "the record as a whole creates serious doubt as to whether the claimant is, in fact, disabled within the meaning of the Social Security Act," a court has flexibility to remand for further proceedings before the Commissioner "even though all conditions of the credit-as-true rule are satisfied."[164]   *Garrison* recognizes that Social Security proceedings should focus "on what the record evidence shows about the existence or non-existence of a disability."[165]   In this case, the ALJ's inadequate explanation of his reasons for discounting Dr. Kagie's opinion does not overshadow the considerable weight of the medical evidence.   This Court's evaluation of the record as a whole, including that medical

---

[162] *Varney v. Sec'y of Health & Human Servs.*, 859 F.2d 1396, 1399 (9th Cir. 1988).

[163] *Garrison v. Colvin*, 759 F.3d 995, 1020 (9th Cir. 2014).

[164] *Id.* at 1021 (citing *Connett v. Barnhart*, 340 F. 3d 871 (9th Cir. 2003)).

[165] *Id.* (quoting *Strauss v. Comm'r of Soc. Sec. Admin.*, 635 F.3d 1135, 1138 (9th Cir. 2011)).

evidence, creates serious doubt as to whether Mr. McLaughlin is, in fact, disabled within the meaning of the Social Security Act.  Specifically, the medical records discussed above demonstrate that Mr. McLaughlin's symptoms have been generally well managed by pain medication.[166]  And this Court has upheld the ALJ's partial adverse credibility finding as to Mr. McLaughlin's reports of the severity of his symptoms.  As a result, the Court finds that this is an appropriate case in which to decline to apply the credit-as-true rule and remand for additional proceedings before the Commissioner.[167]

## CONCLUSION

The ALJ's decision contains legal error because it does not provide specific and legitimate reasons for according little weight to Dr. Kagie's assessments. However, because this Court's evaluation of the record as a whole creates serious doubt as to whether Mr. McLaughlin is, in fact, disabled within the meaning of the Social Security Act, the ALJ's decision is REVERSED and REMANDED for additional proceedings before the Commissioner consistent with this opinion.  The Clerk of Court is directed to enter judgment for Mr. McLaughlin.

DATED this 26th day of September, 2014.

/s/ Sharon L. Gleason
UNITED STATES DISTRICT JUDGE

---

[166] *See, e.g.*, A.R. 601; (Note from Dr. Barranco in December 2010:  After the back surgery in early 2008, Mr. McLaughlin "states that he has done well up until about two months ago when his back went out on him").

[167] *Garrison*, 759 F.3d at 1020–23 (9th Cir. 2014).